932 F.2d 970
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James Henry SALTZMAN, Defendant-Appellant.
 No. 90-6031.
 United States Court of Appeals, Sixth Circuit.
 May 13, 1991.
 
 Before KRUPANSKY and DAVID A. NELSON, Circuit Judges, and GILMORE, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant-Appellant, James Henry Saltzman, appeals his jury conviction and sentence for manufacturing in excess of 100 marijuana plants. Appellant argues, inter alia, that the trial court erred in denying his motion to suppress evidence obtained from a helicopter search allegedly in violation of the fourth amendment. Because we find error in the evidentiary hearings considering the motion, we reverse and remand the case for hearings consistent with this opinion.[1]
 
 
 2
 * On August 26, 1989, during an overflight of Cocke County as part of the Governor's Task Force on Marijuana Eradication, Tennessee Highway Patrol helicopter pilot Mike Dover spotted marijuana growing on Appellant's premises. Dover reported his discovery to ground-based agents of the task force who proceeded to Appellant's residence.
 
 
 3
 Upon their arrival at Appellant's residence, the agents discovered Katherine Thiebault, Appellant's common-law wife, and advised her that marijuana had been spotted on the premises. Thiebault explained that she was not the owner of the home, and subsequently denied the agents permission to search. Thiebault stated that she wished to telephone Appellant, the owner. The agents agreed to let her make the call, but stated that an agent would have to accompany her into the house.
 
 
 4
 Appellant arrived within one hour of Thiebault's call. The agents informed Appellant that marijuana had been observed on his property and read him his rights. Although Appellant signed a Tennessee Alcohol Beverage Commission Consent to Search form, Appellant contends two agents had looked through an open door into the garage and observed marijuana prior to his arrival.
 
 
 5
 Agent Dover returned in the helicopter and directed the ground crew to the patches of marijuana previously observed on the property. The agents also discovered an extensive marijuana growing operation in the basement of Appellant's home. A total of 124 marijuana plants were found growing in and around Appellant's residence.
 
 
 6
 Appellant filed a motion to suppress on February 9, 1990, arguing that the evidence was secured in violation of the fourth amendment and that his consent was not voluntarily given. District Court Judge Thomas G. Hull referred the matter to United States Magistrate Judge Joe A. Tilson, and on February 27, 1990, the Magistrate conducted an evidentiary hearing on Appellant's motion.
 
 
 7
 Thiebault testified at the hearing that the helicopter was very loud and estimated that it was only eighty to one hundred feet high because she could see that the pilot was wearing glasses and a headset. On the other hand, Agent Dover, the helicopter pilot, testified that the helicopter was never lower than one thousand feet over Appellant's property.
 
 
 8
 In his report and recommendation of February 28, 1990, the Magistrate noted that the sole question for determination in the hearing was whether Appellant's consent to search was a valid waiver of his fourth amendment search and seizure rights. Thus, the testimony concerning the height of the helicopter was considered only in relation to the volition of Appellant's consent. The Magistrate credited Dover's testimony as to the helicopter's altitude and concluded that the consent was valid. The Magistrate recommended denial of Appellant's motion.
 
 
 9
 Appellant filed objections to the Magistrate's report, alleging that the consent was not valid, that the helicopter search itself violated the fourth amendment, and that an illegal search occurred before Appellant's consent was given. Along with these objections, Appellant submitted a number of affidavits of neighbors attesting to the low altitude of, and disruption caused by the helicopter.
 
 
 10
 Judge Hull ordered the Magistrate to hold another evidentiary hearing to weigh the witnesses' testimony concerning the height of the helicopter against that already given by Agent Dover. On March 29, 1990, the Magistrate held a second hearing on Appellant's motion.
 
 
 11
 At the second hearing, three neighbors testified that the helicopter was between seventy-five and one hundred fifty feet high. One witness who owned a nearby milk barn testified that the helicopter caused his cows to run scared. Thiebault testified a second time and recounted how the helicopter shook the trees, was very loud, and severly frightened one of her children. Appellant testified that when he arrived and consented to the search, the helicopter was hovering approximately one hundred thirty-five to one hundred forty feet overhead. Dover also testified again and stated that the lowest he may have been over Appellant's property was seven hundred to eight hundred feet.
 
 
 12
 The Magistrate's second report and recommendation, filed on April 24, 1990, again stated that the critical question of the hearing was the voluntariness of Appellant's consent to search. Consequently, the only testimony the Magistrate considered relevant was that which concerned the helicopter's height at the time Appellant gave his consent. The Magistrate discounted the neighbors' testimony, reasoning that their observations of the helicopter's altitude referred to the helicopter's first overflight approximately one hour before the Appellant was at the residence. Even were the helicopter low at that point, the Magistrate explained, it would have little bearing upon the validity of Appellant's consent.
 
 
 13
 The only evidence of the helicopter's altitude that the Magistrate weighed against Dover's testimony was that of Appellant. Finding the Appellant's testimony less credible, the Magistrate determined that the helicopter was at least seven hundred feet off the ground at the time Appellant gave his consent. The Magistrate concluded that the helicopter was not low enough to intimidate Appellant and vitiate his consent to search.
 
 
 14
 The Magistrate again recommended denial of Appellant's motion and Appellant filed the same objections to this recommendation. In a perfunctory Order dated April 16, 1990, the District Court adopted the Magistrate's report and recommendation denying Appellant's motion to suppress.
 
 II
 
 15
 Although Appellant's objections to the Magistrate's first report and recommendation included allegations that the initial helicopter search of Appellant's property violated the fourth amendment, the Magistrate limited his analysis of the helicopter surveillance to its impact upon the voluntariness of Appellant's consent. We find that this limitation was error. The helicopter surveillance itself could constitute a violation of the fourth amendment protection from unreasonable searches and seizures quite apart from its impact upon Appellant's consent. Furthermore, by ignoring as irrelevant all testimony regarding the height and disturbance cause by the helicopter prior to Appellant's arrival at his residence, the Magistrate failed to consider material evidence pertaining to the constitutionality of the helicopter surveillance.
 
 
 16
 The controlling cases concerning aerial surveillance are California v. Ciraolo, 476 U.S. 207, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986) and Florida v. Riley, 488 U.S. 445, 109 S.Ct. 693, 102 L.Ed.2d 835 (1989) (plurality opinion). In Ciraolo, the Court determined that an unenhanced visual inspection of the curtilage of a house conducted while flying a fixed-wing aircraft at one thousand feet did not constitute a search subject to the fourth amendment. The Court recognized that the touchstone of fourth amendment analysis is whether a person has a constitutionally protected reasonable expectation of privacy. Thus the Court considered whether it was within the reasonable expectation of privacy that the defendant's marijuana, in plain view from above, not be subject to aerial scrutiny. The Court concluded that in an age where overflight is commonplace, it is unreasonable for the defendant to expect that his marijuana plants were constitutionally protected from being observed with the naked eye by an aircraft travelling within the limits of properly navigable airspace.
 
 
 17
 In Riley, the Court considered whether helicopter surveillance conducted from the height of four hundred feet, which revealed marijuana growing in the defendant's partially covered greenhouse, constituted a search requiring a warrant. Noting that there is no lower limit of the navigable airspace allowed helicopters, and that flight by helicopter in the public airways is routine, the plurality concluded that the surveillance was not a search for fourth amendment purposes.[2]
 
 
 18
 The plurality also noted that although Riley had shielded his marijuana from view at ground level, because the sides and roof were left partially open, the marijuana growing inside was subject to viewing from the air. Thus Riley could not reasonably have expected the contents to be immune from aerial examination. The plurality also commented upon the absence of any indication that the helicopter surveillance included observation of intimate details connected with the use of the home or curtilage, or caused undue noise, wind, dust or threat of injury.
 
 
 19
 In light of Ciraolo and Riley, it is apparent that the Magistrate did not properly analyze the constitutional ramifications of the helicopter surveillance. The Magistrate's inquiry should have included an assessment of Appellant's reasonable expectation of privacy. Relevant evidence for this inquiry would include how readily observable the marijuana was from above, what precautions Appellant took to protect his property from aerial inspection, and the frequency of helicopter flights in the area.
 
 
 20
 Of equal importance, the Magistrate should have considered the testimony regarding the height of, and disturbance caused by the helicopter during the initial inspection of Appellant's property. Although the Supreme Court in Riley did not identify what amount of disturbance or threat of injury would be required to infringe the fourth amendment, Riley indicates that consideration of such factors is an integral part of fourth amendment analysis. The Magistrate's disregard of these factors was clear error. We therefore reverse the District Court and remand the case for hearings consistent with this opinion.[3]
 
 
 
 *
 Honorable Horace W. Gilmore, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Appellant also seeks reversal based upon allegations of 1) improper transfer from state to federal prosecution; 2) improper destruction of evidence; 3) variance between the schedule of marijuana provided in the indictment and the schedule of marijuana presented at trial; 4) variance between the offense charged in the indictment and the offense cited for sentencing; 5) inadequate standard of proof used for sentencing; and 6) improper sentence. The Court, however, finds no basis for reversal upon any of these grounds
 
 
 [2]
 The dissent in Riley objected to the emphasis the plurality placed upon whether the helicopter was flying at a lawful altitude and cited Ciraolo for the proposition that the correct inquiry is into whether the search violated the defendant's reasonable expectation of privacy. Justice O'Connor agreed with the dissent that the expectation of privacy formula provided the proper analytic structure, but concurred with the plurality because she believed that Riley had failed to show that his expectation of privacy was reasonable
 
 
 [3]
 Until the hearings on remand are completed, it is premature to assess the constitutionality of the alleged pre-consent search or the validity of Appellant's consent. The Court does not now consider what effect a finding that the helicopter surveillance was unconstitutional would have upon the analysis of these issues